## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2019, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Delshawn Marshall, *Appellant-Defendant,* | October 23, 2019 |
| | Court of Appeals Case No. 19A-CR-567 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Elizabeth C. Hurley, Judge |
| | Trial Court Cause No. 71D08-1707-F3-48 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Delshawn Marshall was found guilty of armed robbery, a Level 3 felony, and sentenced to thirteen years in the Indiana Department of Correction, with three years suspended to probation. Marshall appeals his conviction, raising one issue for our review: whether the State presented sufficient evidence to support his conviction. Concluding the State produced sufficient evidence, we affirm.

# Facts and Procedural History

[2] Around 2:30 p.m. on July 18, 2017, Harodd Cureton received a phone call from Sha'paris Jordan asking Cureton to sell her marijuana. Having sold her marijuana two times previously, Cureton agreed to sell Jordan "half of [an] ounce" of marijuana for $120. Transcript, Volume 2 at 17. Originally, Cureton and Jordan had agreed to meet in the parking lot of a bowling alley in South Bend, Indiana. However, Jordan switched the meeting location to Roosevelt Street, which is located in a residential neighborhood. Prior to the meeting, Jordan asked Cureton to send her a picture of himself, which was not commonplace in their previous transactions. Cureton declined to send the picture.

[3] Around 8:30 p.m., Cureton arrived on Roosevelt Street and parked his red Chevrolet Monte Carlo behind Jordan's Saturn Ion. Cureton requested that Jordan come to his car to finalize the transaction, however Jordan insisted that

Cureton come to her car. Cureton agreed and sat in Jordan's passenger seat. While sitting in Jordan's car, Cureton became concerned because in addition to having requested his picture earlier, Jordan was now very focused on texting someone on her phone and seemed to be attempting to stall the sale. After approximately fifteen minutes, Cureton pushed to complete the transaction, but Jordan became flirtatious, even putting her leg out of the car's window and offering to have sex with him.

[4] Around this time, Cureton saw a man, later identified as Marshall, approaching the vehicle with a gun "[h]anging out [of] his pants." *Id.* at 39. Cureton described the gun as black and "like a .45" with a slide on the top. *Id.* at 26. Sensing potential danger, Cureton exited Jordan's vehicle. When Cureton exited the vehicle, Marshall asked Cureton for a cigarette and Cureton obliged. Subsequently, Marshall and Jordan engaged in conversation, making it seem clear to Cureton that they had a previous connection.

[5] Now feeling that danger was imminent, Cureton began running, with Marshall chasing him soon after. Cureton made it past approximately three houses before Marshall caught up to him. Marshall took out his gun and told Cureton to empty his pockets. Cureton had in his pockets a single bag of marijuana; a key ring that contained the key to his Monte Carlo, a whistle, and a heart charm; an LG cell phone; and about $200 cash. Cureton threw these items to the ground in compliance with Marshall's command, and Marshall picked them up and ran away.

[6] Robert Sigafoose, a Roosevelt Street resident, witnessed the chase and robbery from his living room window. He observed a heavy-set male (Cureton) being chased by a "tall slinky guy" with a black gun tucked in his belt (Marshall). *Id.* at 50. He then saw Cureton stop and raise his hands while Marshall picked something up from the ground and ran away. Near the end of the robbery, another neighborhood resident called the police. Shortly thereafter, Cureton realized that his car was missing from where he had left it.

[7] South Bend police arrived at the scene and attempted to gather information from Cureton. Initially, Cureton did not admit to police that he intended to sell marijuana to Jordan. He stated instead that he had simply stopped to help a broken-down car on the side of the road. However, after learning from police that he would not be charged with any drug-related offenses if he told the truth, Cureton provided police with a description of Marshall and Jordan, details of the underlying transaction, and information about his stolen car and possessions.

[8] The police then searched the surrounding area and located Cureton's red Monte Carlo in the parking lot of a nearby apartment complex. Parked directly next to the Monte Carlo was a Saturn Ion, with Jordan in the driver's seat and Marshall in the passenger seat.

[9] Police officers approached the Saturn Ion and instructed Marshall and Jordan to exit the vehicle. Marshall and Jordan were then detained and placed in handcuffs. Police officers returned to the Saturn Ion and, through an open

window, observed a pistol grip protruding from beneath a white towel that was on the floor of the Saturn Ion's passenger seat where Marshall had been sitting.

[10] When Jordan was escorted from the Saturn Ion, police could smell a strong odor of marijuana coming from her clothing. Officers performed a pat-down search of Jordan and found what was later determined to be approximately 8.7 grams of marijuana packaged in a single bag in her "crotch area[.]" *Id.* at 81. Officers also found a partially burned cigar that was filled with marijuana on Jordan's person during the pat-down search. Jordan admitted the marijuana found by officers was the marijuana Cureton intended to sell to her.

[11] Officers transported Cureton to the location of his Monte Carlo to identify Jordan and Marshall. Cureton positively identified Marshall as the man who had robbed him. Jordan and Marshall were arrested.

[12] Officers obtained a search warrant for the Monte Carlo and Saturn Ion and had the vehicles towed to the South Bend police department. Forensic technicians retrieved the gun from the Saturn Ion. Upon further examination and laboratory testing, Marshall's DNA was found on the gun's front side and the bottom of the magazine. According to the laboratory analysis, the DNA was more consistent with someone handling the gun than DNA being transferred to the gun from another object. Other items found in the Saturn Ion included a key ring containing a whistle, heart charm, and the key to Cureton's Monte Carlo; an LG cell phone; and $28 cash.

The State charged Marshall with one count of armed robbery, a Level 3 felony. A jury found Marshall guilty as charged, and the trial court imposed a thirteen-year sentence with three years suspended to probation. Marshall now appeals.

# Discussion and Decision

## I. Standard of Review

When reviewing a conviction for sufficiency of the evidence it is the role of this court to consider only the evidence most favorable to the verdict and all reasonable and logical inferences to be drawn therefrom. *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind. 1995). A conviction will be affirmed if a reasonable juror could find a defendant guilty beyond a reasonable doubt when taking all the facts and inferences in favor of the conviction. *Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). We do not reweigh the evidence or judge the credibility of witnesses. *Wear v. State,* 593 N.E.2d 1179, 1179 (Ind. 1992).

## II. Sufficiency of the Evidence

Marshall contends that the State failed to produce sufficient evidence to convict him of armed robbery. In making his claim, Marshall asks this court to apply the "incredible dubiosity rule." Appellant's Brief at 9. The incredible dubiosity rule allows this court to impinge upon a jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind. 1994). The appropriate scope of the incredible dubiosity rule requires that there be: 1) a sole testifying

witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence. *Moore v. State,* 27 N.E.3d 749, 756 (Ind. 2015).

[16] Marshall acknowledges the State offered the testimony of several witnesses but asserts that the "only witness that directly implicated Marshall in the crime charged was Cureton." Appellant's Br. at 9. He argues Cureton's testimony was inherently improbable, referring to Cureton's previous statements to the police, a lack of detail in his description of Marshall's clothing, and the suggestive nature of his identification of Marshall to police on the day of the crime. Marshall asserts that this case turns on Cureton's testimony alone and that there was no basis upon which a reasonable juror could have found him guilty beyond a reasonable doubt under the incredible dubiosity rule. We disagree.

[17] With respect to the first factor, Marshall's reliance on the incredible dubiosity rule is misplaced. "[T]he application of this rule has been restricted to cases where there is a *single* testifying witness." *Moore,* 27 N.E.3d at 756 (emphasis added). Cureton was not a single testifying witness: Marshall's conviction was based upon the testimony of ten State witnesses.

[18] As to the second factor, the incredible dubiosity rule applies only to conflicts in trial testimony. *Buckner v. State,* 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006). In other words, the second prong is satisfied "only when the witness's trial testimony was inconsistent within itself, not that it was inconsistent with other evidence or prior testimony." *Smith v. State,* 34 N.E.3d 1211, 1221 (Ind. 2015).

Marshall focuses on differences between Cureton's statements to police after the incident and his trial testimony, but Cureton's testimony at trial was not inconsistent or inherently contradictory regarding the elements of the alleged crime.

[19] And as to the third factor, "[i]n a case where there is circumstantial evidence of an individual's guilt, reliance on the incredible dubiosity rule is misplaced." *Id*. at 1222 (quotation omitted). Here, there was a substantial amount of circumstantial evidence, including: 1) Sigafoose's eyewitness account of the chase and robbery, 2) the description of the gun used in the robbery matching the gun found in Marshall's possession, 3) Marshall being in possession of Cureton's stolen belongings, 4) Marshall being found sitting in a car next to Cureton's missing Monte Carlo, and 5) Marshall's DNA being on the handgun.

[20] In sum, there is no basis for applying the incredible dubiosity rule in this case. As such, we now evaluate whether the State presented sufficient evidence to support Marshall's armed robbery conviction. The State was required to prove that Marshall knowingly or intentionally took property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; and that he did so while armed with a deadly weapon. Ind. Code § 35-42-5-1(a).

[21] Here, Cureton testified that Marshall chased him down the street, pulled a gun on him, and "told [him] to empty everything [he] had in [his] pocket[.]" Tr., Vol. 2 at 23-24. After he complied, Marshall then "picked up everything off the

ground and he took off running." *Id.* at 24. Sigafoose testified that he saw the chase, witnessed a man empty his pockets and raise his hands, and then saw a man with a gun pick up the items. Cureton's key ring, cell phone, and marijuana were later found in the Saturn Ion with Jordan and Marshall, which was parked next to Cureton's stolen Monte Carlo. Further, Marshall's DNA was found on a black gun that was located on the floor of the passenger side of the Saturn Ion where he was sitting. Despite Marshall's assertion that there is no evidence tying this gun to the crime, the gun matched descriptions given by both Cureton and Sigafoose at trial. Moreover, this evidence was corroborated by multiple State witnesses including five police officers, two forensic technicians, and Jordan.

Thus, considering only the evidence most favorable to the verdict and all reasonable and logical inferences to be drawn therefrom, we conclude the State has met its burden.

# Conclusion

For the reasons set forth above, we conclude that the incredible dubiosity rule is inapplicable in this case and the victim's testimony and corroborating evidence are sufficient to support Marshall's conviction. Therefore, we affirm.

Affirmed.

Mathias, J., and Pyle, J., concur.